No. 12-56925

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

CHARLOTTE BAXTER,

Plaintiff-Appellant,

v.

RODALE, INC.,

Defendant-Appellee.

On Appeal from the United States District Court
For the Central District of California,
Case No. 2:12-cv-00585-GAF (AGRx)
The Honorable Gary A. Feess, United States District Judge

---

BRIEF FOR
PLAINTIFF-APPELLANT CHARLOTTE BAXTER

---

| Sean Reis | Jay Edelson | Steven Woodrow |
|---|---|---|
| THE REIS LAW FIRM, A.P.C. | Rafey Balabanian | Megan Lindsey |
| 30021 Tomas Street, Suite 300 | Ari Scharg | EDELSON LLC |
| Rancho Santa Margarita, CA 92688 | EDELSON LLC | 999 W. 18th Street, Suite 3000 |
| Phone: (714) 352-5200 | 350 N. LaSalle Street, Suite 1300 | Denver, CO 80202 |
| | Chicago, IL 60654 | Phone: (303) 357-4878 |
| | Phone: (312) 589-6370 | |

*Attorneys for Plaintiff-Appellant CHARLOTTE BAXTER*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ..................................................................... v

STATEMENT OF PERTINENT STATUTORY PROVISIONS ............ vii

STATEMENT OF RELATED CASES ...................................................... 1

STATEMENT OF JURISDICTION.......................................................... 2

ISSUES PRESENTED FOR REVIEW ..................................................... 3

STANDARD OF REVIEW ........................................................................ 6

STATEMENT OF THE CASE .................................................................. 7

STATEMENT OF FACTS ....................................................................... 10

SUMMARY OF THE ARGUMENT ....................................................... 15

ARGUMENT ............................................................................................ 18

I.    CALIFORNIA'S STL LAW REQUIRES THAT BUSINESSES
      BOTH DISCLOSE CONTACT INFORMATION FOR
      CUSTOMERS TO MAKE REQUESTS UNDER § 1798.83(a)
      AND NOTIFY CUSTOMERS OF THEIR RIGHTS UNDER
      THE ACT—OF WHICH RODALE DOES NEITHER ................... 19

      A.    Subdivision 1798.83(a) Describes Disclosures That
            Customers Are Entitled To Receive, Upon Request,
            From Qualified Businesses Regarding The Identities
            Of Third Parties To Whom Their Information Has
            Been Disclosed And The Categories Of Information
            Shared ..................................................................................... 20

B.    Subdivision 1798.83(b) Provides Three Ways For Qualified Businesses To Disclose The Required Contact Information For Making Requests Under Subdivision (a) And Describing Customer Rights Under The STL Law ........................................................ 21

C.    Subdivision 1798.83(c)(2) Describes An Alternative Response That Businesses Who Comply With The Act's Opt-Out Provisions May Provide Upon Receipt Of Customer Requests For Disclosures Under § 1798.83(a) .................................................................... 23

II.    QUALIFIED BUSINESSES MUST COMPLY WITH SUBDIVISIONS (a) AND (b) REGARDLESS OF WHETHER THEY COMPLY WITH SUBDIVISION (c)(2) ............................. 24

A.    The Plain Language Of § 1798.83(b) Imposes Mandatory Obligations On All Qualified Businesses To Disclose Contact Information For Making Requests Under Subdivision (a) And To Describe Their Customers' Rights Under The Act ....................................... 25

B.    The Plain Language Of Subdivision (c)(2) Confirms That It Merely Provides An Alternative Method Of Responding To Customer Inquires Made Under Subdivision (a) ...................................................................... 27

III.    CONTRARY TO THE LOWER COURT'S DECISION, RODALE DID NOT COMPLY WITH § 1798.83(b) ...................... 29

A.    Rodale's Privacy Policy Failed To Designate And Disclose Required Contact Information Necessary For Customers To Request Shine The Light Disclosures ........... 31

B.    Furthermore, Rodale's Privacy Policy Failed To Describe Its Customers' Rights Pursuant To The STL Law .................................................................... 33

IV.   RODALE FURTHER FAILED TO COMPLY WITH
      § 1798.83(c)(2) IN ANY CASE ........................................................ 35

      A.   Rodale's Privacy Policy Failed To Disclose Any
           Policy of Not Sharing Personal Information For
           Customers Who Opt-Out Or Of Only Sharing The
           Information Of Customers Who Opt In ................................ 36

      B.   Rodale Did Not Notify Its Customers Of Their
           Right To Opt-Out Of Information Sharing ........................... 38

      C.   Rodale Did Not Provide Its Customers A Means To
           Request § 1798.83(a) Shine The Light Disclosures .............. 42

CONCLUSION .......................................................................................... 42

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE
STYLE REQUIREMENTS ........................................................................ 45

CERTIFICATE OF SERVICE ................................................................. 46

# TABLE OF AUTHORITIES

## CASES

*Carver v. Lehman*, 558 F.3d 869 (9th Cir. 2009) ............................... 40-41

*Carter v. Smith Food King,* 765 F.2d 916 (9th Cir. 1985) ..................... 40

*Dalisay v. Corbin Consulting Engineers, Inc.*, 303 F. App'x 423
   (9th Cir. 2008) ..................................................................... 6-7

*Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469 (1992) .......... 39-40

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)............................................ 40

*Hansen v. Dep't of Treasury*, 528 F.3d 597 (9th Cir. 2007) ..................... 7

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
   530 U.S. 1 (2000) ................................................................... 39

*Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50 (2004) ................ 26

*Lamie v. United States Trustee,* 540 U.S. 526 (2004) ............................ 39

*Palmer v. United States*, 945 F.2d 1134 (9th Cir. 1991)................... 26, 28

*Price v. City of Stockton*, 390 F.3d 1105 (9th Cir. 2004)........................ 40

*Reyes-Alcaraz v. Ashcroft*, 363 F.3d 937 (9th Cir. 2004) ......................... 7

*Ronyak v. Verde Valley Med. Ctr.,* 308 F. App'x 188
   (9th Cir. 2009) ....................................................................... 3

*Shedd's Estate*, 237 F.2d 345 (9th Cir. 1956)......................................... 39

## STATUTES

28 U.S.C. § 1291 ................................................................... 3

28 U.S.C. § 1332 ................................................................... 2

Cal. Bus. & Prof. Code §§ 17200 ........................................ 2, 7

Cal. Civ. Code § 1798.83...............................................*passim*

## RULES

9th Cir. R. 28-2.6 ................................................................. 1

Fed. R. App. P. 12 .............................................................. 6, 14

## STATEMENT OF PERTINENT STATUTORY PROVISIONS

In 2003, the California legislature passed the Shine the Light Law (the "Act"). The Act provides, *inter alia*, that:

> if a business has an established business relationship with a customer and has within the immediately preceding calendar year disclosed personal information that corresponds to any of the categories of personal information set forth in paragraph (6) of subdivision (e) to third parties, and if the business knows or reasonably should know that the third parties used the personal information for the third parties' direct marketing purposes, that business shall, after the receipt of a written or electronic mail request, or, if the business chooses to receive requests by toll-free telephone or facsimile numbers, a telephone or facsimile request from the customer, provide all of the following information to the customer free of charge . . . .

**Cal. Civ. Code § 1798.83(a)(1)-(2):**

(a) Except as otherwise provided in subdivision (d),

(1) In writing or by electronic mail, a list of the categories set forth in paragraph (6) of subdivision (e) that correspond to the personal information disclosed by the business to third parties for the third parties' direct marketing purposes during the immediately preceding calendar year.

(2) In writing or by electronic mail, the names and addresses of all of the third parties that received personal information from the business for the third parties' direct marketing purposes during the preceding calendar year and, if the nature of the third parties' business cannot reasonably be determined from the third parties' name, examples of the products or services marketed, if known to the business, sufficient to give the customer a reasonable indication of the nature of the third parties' business.

## Cal. Civ. Code § 1798.83(b)(1):

A business required to comply with this section shall designate a mailing address, electronic mail address, or, if the business chooses to receive requests by telephone or facsimile, a toll-free telephone or facsimile number, to which customers may deliver requests pursuant to subdivision (a). A business required to comply with this section shall, at its election, do at least one of the following:

(A) Notify all agents and managers who directly supervise employees who regularly have contact with customers of the designated addresses or numbers or the means to obtain those addresses or numbers and instruct those employees that customers who inquire about the business's privacy practices or the business's compliance with this section shall be informed of the designated addresses or numbers or the means to obtain the addresses or numbers.

(B) Add to the home page of its Web site a link either to a page titled "Your Privacy Rights" or add the words "Your Privacy Rights" to the home page's link to the business's privacy policy. If the business elects to add the words "Your Privacy Rights" to the link to the business's privacy policy, the words "Your Privacy Rights" shall be in the same style and size as the link to the business's privacy policy. If the business does not display a link to its privacy policy on the home page of its Web site, or does not have a privacy policy, the words "Your Privacy Rights" shall be written in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language. The first page of the link shall describe a customer's rights pursuant to this section and shall provide the designated mailing address, e-mail address, as required, or toll-free telephone number or facsimile number, as appropriate. If the business elects to add the words "Your California Privacy Rights" to the home page's link to the

business's privacy policy in a manner that complies with this subdivision, and the first page of the link describes a customer's rights pursuant to this section, and provides the designated mailing address, electronic mailing address, as required, or toll-free telephone or facsimile number, as appropriate, the business need not respond to requests that are not received at one of the designated addresses or numbers.

(C) Make the designated addresses or numbers, or means to obtain the designated addresses or numbers, readily available upon request of a customer at every place of business in California where the business or its agents regularly have contact with customers.

## Cal. Civ. Code § 1798.83(c)(2):

If a business that is required to comply with this section adopts and discloses to the public, in its privacy policy, a policy of not disclosing personal information of customers to third parties for the third parties' direct marketing purposes unless the customer first affirmatively agrees to that disclosure, or of not disclosing personal information of customers to third parties for the third parties' direct marketing purposes if the customer has exercised an option that prevents that information from being disclosed to third parties for those purposes, as long as the business maintains and discloses the policies, the business may comply with subdivision (a) by notifying the customer of his or her right to prevent disclosure of personal information, and providing the customer with a cost-free means to exercise that right.

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Plaintiff-Appellant Charlotte Baxter ("Plaintiff" or "Baxter") herein identifies all "known related case[s] pending in this court." As Baxter explained in detail in her Joint Motion to Consolidate Appeals and Reset the Briefing Schedule, filed before the Court in *Boorstein v. Men's Journal LLC*, Appeal No. 12-56696, on March 1, 2013, the following appeals "raise the same or closely related issues" involving interpretation of California's Shine the Light Law, Cal. Civ. Code § 1798.83 *et seq.* (the "STL Law" or the "Act").

> *Boorstein v. Men's Journal LLC*, Appeal No. 12-56696;
>
> *King v. Conde Nast Publ'ns*, Appeal No. 12-57209;
>
> *Miller v. Hearst Commc'ns. Inc.*, Appeal No. 12-57231; and
>
> *Murray v. Time Inc.*, Appeal No. 12-17591.

These cases present common questions regarding the requirements for showing Article III and statutory standing under the Act, as well as statutory interpretation questions related to the elements needed to state violations of the STL Law.

On March 27, 2013, the Court issued an Order granting in part and denying in part the Joint Motion to Consolidate. (*See* Dkt. 10.) The

Court declined to consolidate the appeals but determined that judicial resources would be best served by assigning the five pending appeals to one judicial panel. Plaintiffs-Appellants' opening briefs in *Boorstein*, *Baxter*, and *Murray* are due April 15, 2013. The opening briefs in *King* and *Miller* are due May 20, 2013.

## STATEMENT OF JURISDICTION

On January 23, 2012, Plaintiff filed her putative Class Action Complaint in the Central District of California, alleging violations of the STL Law and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (R. 29-43) The district court had jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because at least one plaintiff is from a state different than one defendant, the putative class consists of at least 100 members, and the aggregate of their damages exceeds $5,000,000. (R. 31, ¶ 12.) Plaintiff-Appellant Charlotte Baxter is a citizen of the State of California. (*Id.* ¶ 10.) Defendant-Appellee Rodale, Inc. ("Rodale") is a Pennsylvania corporation with its principal place of business in the State of Pennsylvania. (*Id.* ¶ 11.)

Baxter appeals to this Court the district court's August 29, 2012 Order granting Rodale's Motion to Dismiss Plaintiff's Complaint (R. 5-20)[1], as well as the district court's September 19, 2012 Judgment dismissing Plaintiff's claims (R. 4). Plaintiff Baxter timely filed her Notice of Appeal with the district court on October 18, 2012. (R. 1-3.)

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, which vests the Courts of Appeals with "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291; *Ronyak v. Verde Valley Med. Ctr.,* 308 F. App'x 188, 189 (9th Cir. 2009).

## ISSUES PRESENTED FOR REVIEW

1.     Whether a qualified business that is presumed to have complied with Cal. Civ. Code § 1798.83(c)(2) ("Subdivision (c)(2)") by providing customers with a cost-free means for opting out of having their personal information disclosed to third parties must still comply with § 1798.83(b) ("Subdivision (b)") by designating and disclosing contact information to facilitate customer requests under § 1798.83(a) ("Subdivision (a)") for the identities of third parties with whom the

---

[1]     Citations to the Excerpts of the Record will be indicated by the applicable page range ("R.").

3

business has disclosed the customer's personal information and the categories of information shared along with a description of the customer's rights under the Act?

This issue was raised by Rodale in its Motion to Dismiss the Complaint. (*See* Dkt. 24 at 5.) The district court addressed this matter in its Order and noted the matter would be "dispositive" had it found Rodale failed to comply with § 1798.83 (a) and (b). (*See* R. 19.)

2.    Whether businesses that comply with Subdivision (c)(2) must fulfill the requirements of § 1798.83(b)(1) by designating a phone or fax number, or e-mail or mail address to which customers may deliver requests for information under Subdivision (a) and by disclosing such information, along with a description of the customer's rights, using one of the three methods set forth in § 1798.83(b)(1)(A)-(C)?

This issue was raised by Rodale in its Motion to Dismiss the Complaint. (*See* Dkt. 24 at 6.) The district court addressed this matter in its Order and noted the matter would be "dispositive" had it found Rodale failed to comply with § 1798.83 (a) and (b). (*See* R. 19.)

3.    Whether a qualified business's practice of notifying customers via its privacy policy that customers may "let [the business]

4

know" if they prefer to not have their personal information shared satisfies Subdivision (c)(2)'s requirement that businesses seeking to avail themselves of its alternative response provision "adopt and disclose to the public . . . a policy of not disclosing the personal information of customers to third parties . . . if the customer has exercised an option that prevents that information from being disclosed to third parties"?

This issue was raised by Rodale in its Motion to Dismiss the Complaint. (*See* Dkt. 24 at 10.) The district court ruled on this issue in its Order dismissing the Complaint. (*See* R. 19.)

4.    Whether a business that notifies customers via its privacy policy that customers may "let [the business] know" if the customers do not want the business to share their personal information has sufficiently notified customers of their right to prevent disclosure of personal information pursuant to § 1798.83(c)(2)?

This issue was raised by Rodale in its Motion to Dismiss the Complaint. (*See* Dkt. 24 at 10.) The district court ruled on this issue in its Order dismissing the Complaint. (*See* R. 20.)

5.     Whether a business that notifies customers via its privacy policy that customers may "let [the business] know" if the customers do not want the business to share their personal information has satisfied its obligation to "describe[ ] a customer's rights pursuant to this section" (i.e., § 1798.83) as required by § 1798.83(b)(1)(B)?

This issue was raised by Baxter in her Response to Rodale's Motion to Dismiss the Complaint. (*See* Dkt. 28 at 14.) The district court ruled on this issue in its Order dismissing the Complaint. (*See* R. 19.)

6.     Whether a business that lists a toll-free number or mailing address for customers to submit opt-out requests has satisfied its obligation to "designate a mailing address, electronic mail address . . . toll-free telephone or facsimile number, to which customers may deliver requests pursuant to [§ 1798.83(a)]" as required by § 1798.83(b)(1)?

This issue was raised by Baxter in her Response to Rodale's Motion to Dismiss the Complaint. (*See* Dkt. 28 at 14.) The district court ruled on this issue in its Order dismissing the Complaint. (*See* R. 19.)

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Dalisay*

6

*v. Corbin Consulting Engineers, Inc.*, 303 F. App'x 423, 423 (9th Cir. 2008). The Court accepts all facts in the complaint as true, views them in the light most favorable to the plaintiff-appellant, and draws all reasonable inferences in her favor. *See Hansen v. Dep't of Treasury*, 528 F.3d 597, 599 (9th Cir. 2007). Likewise, the Court reviews issues of law *de novo. See Reyes-Alcaraz v. Ashcroft*, 363 F.3d 937, 939 (9th Cir. 2004).

## STATEMENT OF THE CASE

This appeal is one of several similar matters seeking to define the rights of consumers under California's Shine the Light Law ("SLT Law" or the "Act"). Plaintiff-Appellant Charlotte Baxter ("Baxter" or "Plaintiff") challenges the district court's dismissal of her putative class action, brought on behalf of herself and all others similarly situated, alleging that Defendant Rodale failed to comply with the Act and engaged in unlawful business practices in violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200).

The Act requires qualified businesses to (i) designate a mailing address, email address, phone number, or facsimile number where customers may request the identities of third parties that Rodale has

7

shared the customer's personal information with and the categories of information shared, and (ii) disclose that contact information along with a statement of the customer's rights under the Act using one of three methods set forth in Subdivision (b). *See* § 1798.83(b)(1)(A)-(C).

Baxter alleges that Rodale failed to inform its customers of both their rights under the Act and the means through which those rights could be exercised. Specifically, Rodale failed to designate or disclose any point of contact, such as a telephone number, e-mail address, or mailing address, through which customers could deliver requests for information (as required by § 1798.83(b)(1) of the Act), and further, failed to inform customers about how to exercise their rights under the Act using any of the three method set forth under § 1798.83(b)(1)(A)-(C). Baxter alleges that Rodale thus violated the STL Law and acted unlawfully in violation of the UCL.

Following full briefing on Defendant's Motion to Dismiss, the district court dismissed the case, holding that although Plaintiff had adequately demonstrated Article III and statutory standing, Rodale's policies were in compliance with the STL Law. Specifically, the Court found that Rodale did not violate the Act because its website disclosures

8

supposedly satisfied the Act's "opt-out provision" under § 1798.83(c)(2), along with any provisions of § 1798.83(a) and (b) "that remained operative." (R. 19.)

As explained in her recently filed Motion to Consolidate, Baxter's appeal is one of five appeals presently before the Ninth Circuit challenging several businesses' violations of the STL Law. The appeals challenge similar issues, including the elements required to state a violation of the Act, the requirements for demonstrating Article III and/or statutory standing to sue, and whether businesses can avoid responding to requests for information under Subdivision (a) (regarding the identities of third parties with whom the businesses shared their customers' personal information and the types of information disclosed) altogether by including a statement on their company website that people can let the company know they prefer not to have their information shared. Although this Court declined to consolidate the appeals, it assigned all five proceedings to a single judicial panel.

The central question in this case asks whether Baxter has sufficiently pled a violation of the STL Law. The district court determined that Baxter couldn't do so because, supposedly, Rodale had

complied with Subdivision (c)(2) (the "opt-out" provision) and any remaining requirements of Subdivisions (a) and (b). Specifically, the district court concluded without the benefit of any discovery that Rodale's Privacy Policy contained adequate information to satisfy the contact information disclosure requirements set forth in Subdivision (b), and that it properly adopted and disclosed a policy of allowing customers to opt-out of information sharing. Issues before this Court therefore include whether Rodale was required to comply with § 1798.83(b) *regardless* of its supposed compliance with (c)(2), and whether Rodale complied with § 1798.83(b) and (c)(2) in the first instance.

On October 18, 2012, Baxter timely filed her Notice of Appeal. (R. 1-3.)

## STATEMENT OF FACTS

### *The Shine the Light Law*

In 2003, the California Legislature passed the STL Law to protect consumers from companies who surreptitiously collect and share their sensitive personal information with third parties. The Act empowers consumers to "shine the light" on companies' data sharing methods and

10

policies by requiring that qualified businesses establish a procedure through which customers can request and receive an explanation of how their personal information is collected and disclosed.

Accordingly, businesses governed by the Act are required to: (i) respond to customer requests for the identities of third parties the businesses have shared their customers' personal information with and the categories of information shared under § 1798.83(a)(1)-(2), (ii) designate a dedicated mailing address (physical or electronic) or phone/facsimile number where requests for information can be delivered under § 1798.83(b)(1); and (ii) disclose that contact information to customers along with a description of the customers' rights under the Act using one of three methods contemplated by § 1798.83(b)(1)(A)-(C).

Additionally, § 1798.83(c)(2) of the Act allows businesses that meet its requirements[2] to comply with § 1798.83(a) by responding to

---

[2]    To comply with Subdivision (c)(2), the business must:

adopt[] and disclose[] to the public, in its privacy policy, a policy of not disclosing personal information of customers to third parties for the third parties' direct marketing purposes unless the customer first affirmatively agrees to that disclosure, or of not disclosing the personal

11

customer requests for information by notifying the customer of their right to opt-out and providing a cost free means for doing so.

### *Rodale's Failure to Comply with the Act*

Rodale publishes magazines and operates several websites, including: www.runnersworld.com, www.womenshealthmag.com, and www.menshealth.com. (R. 35, ¶ 29.) When subscribing to one of Rodale's magazines or websites, customers are required to disclose several personal details to the Defendant, including their name, address, e-mail address, telephone number, gender, and date of birth. (*Id.* ¶ 30.) Rodale maintains its customers' information on its servers and shares this information with third parties for the third parties' direct marketing purposes. (*Id.* ¶¶ 31-32.)

Notwithstanding the fact it is subject to the Act, Rodale routinely violated the STL Law. Rodale's only attempt to comply with the Act was

---

information of customers to third parties for the third parties' direct marketing purposes if the customer has exercised an option that prevents that information from being disclosed to third parties for those purposes . . . .

As explained below, Rodale's Privacy Policy—particularly when read in a light most favorable to Baxter—shows that it falls far short of these requirements.

through its online privacy policy (the "Privacy Policy"), which states in relevant part:

> If you do not want us to share your [personal information] with other companies or organizations, please let us know by accessing the form at http://www.rodale.com/cs/privacy.html, by calling us at 866-387-0509, or writing to us at Customer Service, Rodale Inc., 400 South Tenth Street, Emmaus, PA 18098.

(R. 53.) On its face, the Privacy Policy fails to disclose that Rodale's policy was to not share the personal information of customers who respond that they "do not want [Rodale] to share [their personal information] with other companies" or that customers have an actual *right* to opt-out of having their information disclosed. Further, the Privacy Policy neither informed customers of their right to request information under the Act nor provided a way for them to do so.

### *Rodale Violated Plaintiff Baxter's Rights Under the Act*

Plaintiff Baxter, a California resident, signed up for a subscription to Rodale's *Runner's World* magazine in 2011. (R. 36, ¶¶ 36-37.) To complete her subscription, Baxter was required to provide her full name, mailing address, e-mail address, zip code, gender, and birth date. (*Id.* ¶ 38.) In addition to receiving *Runner's World* magazine, Baxter

13

visited Rodale's website, www.runnersworld.com, on several occasions. (*Id.* ¶ 39.)

Other than the online Privacy Policy described above, Baxter never viewed or received any additional disclosures about her rights under the Act or her ability to opt-out of Rodale's sharing of her information. Nor was she made aware of her right to request information about the categories of information that were being disclosed and to whom, or where she could send such a request. On January 23, 2012, Baxter filed her class action complaint alleging that Rodale's conduct violated the Act and the unlawful prong of the UCL. (R. 29-58.)

### *The District Court's Dismissal of the Complaint*

On February 27, 2012, Rodale filed a Motion to Dismiss Baxter's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 24.) Rodale argued that Baxter lacked both Article III and statutory standing to bring her claims and that its Privacy Policy complied with the Act under § 1798.83(c)(2)—compliance that Rodale asserted obviated any supposed need it had to comply with Subdivision (a). Put succinctly, Rodale claimed that its use of (c)(2)'s supposed opt-

14

out alternative nullified its other obligations under the Act, including the response requirement under § 1798.83(a) and § 1798.83(b)'s contact information disclosure rules and description of rights requirements.

On August 29, 2012, the district court issued an Order granting Rodale's Motion to Dismiss. (R. 5-20.) The Order found Baxter had both Article III and statutory standing to pursue her claims but that she had failed to allege any violation of the Act. Specifically, the court found that Rodale's Privacy Policy satisfied § 1798.83(c)(2). Further, the court declined to rule on whether providing consumers with disclosures under § 1798.83(c)(2) obviates a business's obligation to respond to customer requests or disclose required contact information and a description of rights under § 1798.83(a) and (b). Rather, the court found that Rodale had also complied with both (a) and (b) to the extent required.

On September 19, 2012, the Court entered the final order dismissing Baxter's case with prejudice. (R. 4.) Baxter thereafter timely filed the instant Appeal on October 18, 2012. (R. 1-3.)

## SUMMARY OF THE ARGUMENT

Rodale willfully violates California's STL Law as a matter of routine practice and policy. The STL Law was enacted to enable

15

California customers to "shine the light" on businesses' information sharing practices. The Act requires qualified businesses, such as Rodale, to designate an address, email address, phone number, or facsimile number where customers may request the identities of third parties with whom their information has been shared and the categories of information shared. It also requires that qualified businesses comply with one of the methods described in § 1798.83(b) for disclosing the designated contact information and providing customers with a description of their rights under the Act—regardless of whether customers can opt-out of information sharing under § 1798.83(c)(2). Rodale failed to comply with any of Subdivision (b)'s obligations (it failed to designate contact information or disclose it along with a description of customer rights using one of § 1798.83(b)'s three methods) and therefore violated the Act.

Qualified businesses must comply with § 1798.83(b) regardless of whether they fall under § 1798.83(c)(2). Subdivision 1798.83(c)(2) merely provides customers with an alternative way to comply with § 1798.83(a)—i.e., it allows businesses to respond to customer requests for information by notifying them of their right to opt-out of information

16

sharing, so long as Subdivision (c)(2)'s other provisions have been met—
it doesn't eliminate a qualified business's obligation to comply with the
remainder of the Act. That qualified businesses must comply with
Subdivision (b), regardless of any compliance with Subdivision (c)(2), is
supported by Subdivision (b)'s plain language, which imposes
affirmative obligations on all businesses required to comply with this
"section."

As a qualified business, Rodale was therefore required to comply
with § 1798.83(b), which it failed to do. Specifically, Rodale did not
designate and disclose in its Privacy Policy the requisite contact
information that customers could use to request the identities of the
third parties with whom Rodale shared their information and the
categories of information that it shared. It also failed to provide a
description of its customers' rights under the Act. Accordingly, Baxter
has stated a claim for violation of § 1798.83(b) of the STL Law.

Rodale also failed to comply with § 1798.83(c)(2). Rodale never
adopted or disclosed to the public any policy of only sharing information
when its customers opt-in, or of not sharing information when
customers opt-out. It also failed to notify its customers of their right to

17

opt-out of information sharing. Rather, it merely invited customers to express their preference with respect to Rodale's information sharing—without any indication regarding what Rodale would do, if anything, in response to any customer's expressed preference. Therefore, even if the Court were to find that § 1798.83(c)(2) operates in the alternative to (b), Baxter has still stated a violation because Rodale failed to satisfy Subdivision (c)(2).

For these reasons, and as further explained below, the district court erred when it determined that Baxter had not stated a claim for a violation of the STL Law. Accordingly, this Court should reverse and remand.

## ARGUMENT

In its Order dismissing Baxter's Complaint, the district court found that Baxter had failed to state a claim for a violation of the Act because, supposedly, Rodale had complied with *both* § 1798.83(b) and § 1798.83(c)(2). Although the district court declined to formally rule on whether businesses that comply with § 1798.83(c)(2) must also comply with § 1798.83(b), it noted that the answer to that question would be "dispositive" had Rodale failed to comply with § 1798.83(b). (R. 19.)

18

As explained in detail below, qualified businesses, like Rodale, must comply with § 1798.83(b) regardless of whether they comply with § 1798.83(c)(2). Under the plain language of the Act, Rodale failed to comply with § 1798.83(b), and therefore Baxter has stated a violation. Further, Rodale failed to comply with § 1798.83(c)(2) as well, meaning Baxter stated a violation regardless of whether the Court finds qualified businesses that comply with § 1798.83(c)(2) must also comply with (a) and (b).

Accordingly, this Court should reverse the district court and remand the case for further proceedings.

## I. CALIFORNIA'S STL LAW REQUIRES THAT BUSINESSES BOTH DISCLOSE CONTACT INFORMATION FOR CUSTOMERS TO MAKE REQUESTS UNDER § 1798.83(a) AND NOTIFY CUSTOMERS OF THEIR RIGHTS UNDER THE ACT—OF WHICH RODALE DOES NEITHER.

The STL Law empowers consumers to "shine the light" on companies' data sharing methods by requiring businesses to establish a procedure by which customers can receive an explanation of how their personal information is disclosed to third parties. The rights and responsibilities created by the Act are largely detailed in § 1798.83(a) and (b). Subdivision 1798.83(c)(2) provides businesses an alternative

19

method of responding to customer requests for disclosures otherwise
mandated by § 1798.83(a) (for the identities of third parties the
business has shared its customers' personal information with and a list
of the categories of information shared).

**A.    Subdivision 1798.83(a) Describes Disclosures That
Customers Are Entitled To Receive, Upon Request,
From Qualified Businesses Regarding The Identities
Of Third Parties To Whom Their Information Has
Been Disclosed And The Categories Of Information
Shared.**

Subdivision 1798.83(a) describes a qualified business's obligation
to respond to customer requests for information regarding the
business's information sharing practices. A "qualified business" is a
company, like Rodale, that has an established business relationship
with California customers and has disclosed its customers' personal
information to third parties for the third parties' direct marketing
purposes. Upon receipt of a customer request, a qualified business must
disclose a list of the categories of personal information that have been
disclosed to third parties over the past year along with the names and
addresses of all third parties who received such information for direct
marketing purposes (together, "Shine the Light disclosures"). §
1798.83(a)(1)-(2). Notably, a qualified business's obligation to disclose

information under § 1798.83(a) is triggered by the receipt of a customer

request for information.

### B. Subdivision (b) Provides Three Ways For Qualified Businesses To Disclose The Required Contact Information For Customers Making Requests Under Subdivision (a) And Describing Customer Rights Under The STL Law.

To facilitate customer requests for information under § 1798.83(a),

the Act requires covered businesses to: (i) ***designate*** a mailing address,

email address, telephone number, or facsimile number for customers to

deliver requests for Shine the Light disclosures and (ii) ***disclose*** the

designated contact information to customers, along with a description of

the customers' rights, through one of the three methods set forth in §

1798.83(b)(1)(A)-(C).

First, businesses with traditional "brick and mortar" storefronts

may comply with the Act's disclosure requirement by making

designated addresses or phone numbers "readily available upon request

of a customer at every place of business in California where the

business or its agents regularly have contact with customers." §

1798.83(b)(1)(C).

On the other hand, an Internet business with no "brick and mortar" locations—such as Rodale—can comply by:

> Add[ing] to the home page of its Web site a link either to a page titled "Your Privacy Rights" or add[ing] the words "Your Privacy Rights" to the home page's link to the business's privacy policy . . . The first page of the link shall describe a customer's rights pursuant to this section and shall provide the designated mailing address, e-mail address, as required, or toll-free telephone number or facsimile number, as appropriate.

§ 1798.83(b)(1)(B).

As a third method, in cases where the business has "employees who regularly have contact with customers," the business may:

> Notify all agents and managers who directly supervise employees who regularly have contact with customers of the designated addresses or numbers or the means to obtain those addresses or numbers and instruct those employees that customers who inquire about the business's privacy practices or the business's compliance with this section shall be informed of the designated addresses or numbers or the means to obtain the addresses or numbers.

§ 1798.83(b)(1)(A). This final option requires that businesses both: (i) notify agents and managers with direct supervision over employees who regularly have contact with customers of the business's designated addresses or numbers to make requests under § 1798.83(a) or the way customers can obtain them, and (ii) instruct those employees to tell

22

customers who ask about either the business's privacy policies or its compliance with the Act of the designated addresses or numbers or the means to obtain them.

Of Subdivision (b)'s three ways to comply, Rodale could've availed itself of the second method by: (i) editing its policy to "describe a customer's rights pursuant to this section" and (ii) properly disclosing "the designated mailing address, an e-mail address, as required, or toll-free telephone number or facsimile number, as appropriate." As a hearing on the merits would ultimately show, Rodale failed to take either required action.

**C.    Subdivision 1798.83(c)(2) Describes An Alternative Response That Businesses Who Comply With The Act's Opt-Out Provisions May Provide Upon Receipt Of Customer Requests For Disclosures Under § 1798.83(a).**

Finally, § 1798.83(c)(2) enables qualified businesses that otherwise comply with Subdivision (c)(2) to notify their customers of the right to opt-out of information-sharing in lieu of providing Shine the Light disclosures mandated by § 1798.83(a). Subdivision 1798.83(c)(2) is available to a qualified business that "adopts," "maintains and discloses" a policy of:

not disclosing personal information of customers to third parties for the third parties' direct marketing purposes unless the customer first affirmatively agrees to that disclosure, or of not disclosing the personal information of customers to third parties for the third parties' direct marketing purposes if the customer has exercised an option that prevents that information from being disclosed to third parties for those purposes.

§ 1798.83(c)(2). In response to a customer's request for information under Subdivision (a), the business must notify the customer of his or her right to prevent disclosure and provide a cost-free means for doing so. (*See id.*) ("[T]he business may comply with ***subdivision (a)*** by notifying the customer of his or her right to prevent disclosure of personal information, and providing the customer with a cost-free means to exercise that right.") (Emphasis added.)

## II. QUALIFIED BUSINESSES MUST COMPLY WITH SUBDIVISIONS (a) AND (b) REGARDLESS OF WHETHER THEY COMPLY WITH SUBDIVISION (c)(2).

Defendant Rodale argued in its Motion to Dismiss that it was not required to comply with § 1798.83(a) or (b) because it supposedly complied with § 1798.83(c)(2). (*See* R. 18) (discussing Rodale's Motion to Dismiss). According to Rodale, Subdivision (c)(2) allows it to avoid responding to requests for information under Subdivision (a) altogether so long as it allows customers to opt-out of having their information

24

shared. Further, Rodale claims that in the absence of a requirement that it respond to requests for Shine the Light disclosures, it need not disclose contact information for making such requests or advise customers of any right under the Act unconnected to the customer's ability to opt-out. While the district court did not rule on the issue, it noted that the answer to the question would be "dispositive" had Rodale not complied with § 1798.83(a), (b) and (c)(2). This Court should reject Rodale's interpretation of the Act and find qualified businesses must comply with § 1798.83(b) regardless of any compliance with (c)(2).

## A. The Plain Language Of § 1798.83(b) Imposes Mandatory Obligations On All Qualified Businesses To Disclose Contact Information For Customers Making Requests Under Subdivision (a) And To Describe Their Customers' Rights Under The Act.

Subdivision 1798.83(b) is mandatory and applies irrespective of a business's compliance with Subdivision (c)(2). First, Subdivision (b) begins by stating that all qualified businesses "shall" designate contact information and fulfill at least one of the alternatives set forth in § 1798.83(b)(1)(A)-(C). Use of the term "shall" demonstrates that the duty to satisfy §1798.83(b)(1)(A)-(C) is mandatory and independent of the duty to comply with § 1798.83(a), let alone § 1798.83(c)(2).

Second, unlike § 1798.83(a) and (c)(2), which turn on a customer's request for information, the plain language of § 1798.83(b) states "[a] business required to comply with ***this section shall*** designate" contact information. It further states "[a] business required to comply with ***this section*** shall" comply with at least one method described in § 1798.83(b)(1)(A)-(C). Repeated use of the phrase "this section" shows the passage encompasses the entire STL Law, *see Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 60 (2004) (describing "hierarchical scheme" used "in subdividing statutory sections"); (*see also* § 1798.83(c)(2)) (specifically referring to § 1798.83(a) as "subdivision (a)" rather than "section (a)").

Further, in essence, Rodale asks the court to re-write § 1798.83(b) to add "a business *required to disclose information described in § 1798.83(a)* shall . . . ." *But see Palmer v. United States*, 945 F.2d 1134, 1136 (9th Cir. 1991) (court shouldn't "rewrite the plain language of a state statute"). Rodale's reading (*see* Dkt. 42 at 14) is thus inconsistent with the STL Law's plain language.

Additionally, the information required to be disclosed by § 1798.83(b)—contact information for making requests for information

26

and a description of the customer's rights under the Act—is needed so that customers can make requests under § 1798.83(a) and (c)(2) in the first instance. In the absence of § 1798.83(b)'s mandate, consumers wouldn't know how to exercise their rights under either § 1798.83(a) or (c)(2) because they wouldn't know of their rights under the Act or the contact information for submitting Shine the Light disclosures. Thus, even if § 1798.83(a) and (c)(2) are alternative ways of complying with the Act as a whole, all qualified businesses must still satisfy their independent obligations under § 1798.83(b).

Accordingly, this Court should find that a business's compliance with § 1798.83(c)(2) doesn't obviate its need to disclose contact information and provide a description of customer rights in accordance with Subdivision (b). Rather, and as explained next, Subdivision (c)(2) merely provides an alternative method for complying with requests for Shine the Light disclosures.

**B.    The Plain Language Of Subdivision (c)(2) Confirms That It Merely Provides An Alternative Method Of Responding To Customer Inquires Made Under § Subdivision (a).**

The plain language of § 1798.83(c)(2) confirms that it merely describes an alternative method of responding to customer inquires

27

under § 1798.83(a) and that it doesn't impact a qualified business's obligation to respond to requests under Subdivision 1798.83(a) or designate and disclose contact information under Subdivision (b). Notably, both Subdivisions (a) and (c)(2) are triggered by a customer request for information, whereas Subdivision (b) imposes an immediate, affirmative obligation on businesses.

Subdivision 1798.83(c)(2) states that qualified businesses may "comply with subdivision (a)" by notifying such customers of their right to opt-out of information sharing. *See* 1798.83(c)(2). If the legislature had intended to relieve businesses that comply with Subdivision (c)(2) of their obligation to designate and disclose information under Subdivision (b) as well, Subdivision (b) could and would have been added here. Rodale's attempt to insert such language after-the-fact should be rejected. *See Palmer*, 945 F.2d at 1136.

Additionally, that the Act uses the term "by notifying the customer"—as opposed to "by notifying customers" or "by disclosing to customers on its privacy policy"—signals that Subdivision (c)(2) wasn't intended to provide a general disclosure of opt-out rights; but rather, that it allows businesses to respond to customer requests under

28

Subdivision (a) with a notice of their opt-out rights (and a cost-free means for doing so) as opposed the Shine the Light disclosures. Moreover, Subdivision (c)(2) requires that businesses disclose their respective "opt-in" or "opt-out" practices in their official privacy policies, but the duty to notify customers of the right to opt-out is described separately. This signals that the legislature contemplated such notification would occur as an alternative response to a customer's request for information under Subdivision (a).

Qualified businesses must therefore comply with § 1798.83(b) regardless of any supposed compliance with Subdivision (c)(2). Accordingly, this Court should find that all qualified businesses must comply with § 1798.83(b) regardless of § 1798.83(c)(2).

## III.  CONTRARY TO THE LOWER COURT'S DECISION, RODALE DID NOT COMPLY WITH SUBDIVISION (b).

The district court found that Rodale had complied with § 1798.83(b) and that Baxter had therefore failed to state a violation of the Act. (*See* R. 19.) Specifically, the district court determined that Rodale had (i) designated contact information and (ii) described its customers' rights under the Act—including the right to request a list of third parties that it shares personal information with and the

29

categories of information shared, and had therefore fully satisfied the

privacy policy requirements described in § 1798.83(b)(1)(B).[3]

In full, the privacy policy that allegedly disclosed Rodale's

information-sharing practices stated as follows:

> From time to time, we make your PII available to other
> reputable businesses whose products or services might be of
> value to you. If you do not want us to share your PII with
> other companies or organizations, please let us know by
> accessing the form at http://www.rodale.com/cs/privacy.html,
> by calling us at 866-387-0509, or writing to us at Customer
> Service, Rodale Inc., 400 South Tenth Street, Emmaus, PA
> 18098.

(*See* R. 17) (citing R. 53.) As explained in detail below, this policy failed

to comply with § 1798.83(b)(1) and (b)(1)(B) for at least two reasons.

First, nowhere does the policy designate and disclose contact

information where customers could request Shine the Light disclosures.

Second, the Privacy Policy does not describe Rodale's customers' rights

under the Act, including the right to request Shine the Light disclosures

---

[3]    As an Internet-based company with no brick-and-mortar stores in
California, Baxter alleged Rodale was required to comply with the
privacy policy disclosure method described in § 1798.83(b)(1)(B) and
could not implement the methods described in § 1798.83(b)(1)(A) and
(b)(1)(C). (R. 39-40, ¶¶ 51-54.) The district court did not address the
alternative methods of compliance described in (b)(1)(A) and (b)(1)(C).

or—even under a reading most favorable to Rodale—their affirmative right to opt-out of information sharing.

### A. Rodale's Privacy Policy Did Not Designate And Disclose The Contact Information Necessary For Customers To Request Shine The Light Disclosures.

First, Rodale did not comply with § 1798.83(b)(1) because it failed to designate contact information where customers could request disclosures under the Act and, by deduction, failed to disclose such contact information in its Privacy Policy. Subdivision 1798.83(b)(1) requires qualified businesses like Rodale to:

> designate a mailing address, electronic mail address, or, if the business chooses to receive requests by telephone or facsimile, a toll-free telephone or facsimile number, to which customers may deliver requests pursuant to subdivision (a).

*See* § 1798.83(b)(1). Business required to comply with the "privacy policy" method must then disclose the designated contact information in its privacy policy. *See* § 1798.83(b)(1)(B).

Rodale's Privacy Policy falls far short of this requirement. While the Privacy Policy discloses a telephone number and mailing address, this is merely the contact information for general customer service, rather than contact information "designate[d]" for Shine the Light disclosures. Indeed, the bottom of Rodale's Privacy Policy confirms the

"customer service" telephone number (866-387-0509) is the exact same number that the district court determined had been "designate[d]" for Shine the Light disclosures. (*See* R. 53, 57.) Likewise, the mailing address supposedly designated by Rodale is, by the plain language of the Privacy Policy disclosure, the address for general customer service. (R. 53.) Therefore, the district court was mistaken when it found Rodale had designated contact information for customers to make requests for Shine the Light disclosures.

Further, the telephone number and mailing address disclosed by Rodale were provided so customers could "let [Rodale] know" if the customers no longer wanted Rodale to share their personal information, and thus falls under § 1798.83(b)(1). (*Id.*) This isn't enough. Subdivision 1798.83(b)(1) requires the contact information be designated and disclosed so customers may seek Shine the Light disclosures. *See* § 1798.83(b)(1) (Businesses must designate contact information "to which customers may deliver requests pursuant to subdivision (a)."). Rodale's contact information was not designated for that purpose; but rather, it

32

was posted so customers could tell Rodale that they do not want their information to be shared.[4]

Thus, Rodale didn't satisfy § 1798.83(b)(1)—Rodale failed to designate contact information for customers to make requests for Shine the Light disclosures. (*See* R. 19.)

## B.    Furthermore, Rodale's Privacy Policy Failed To Describe Its Customers' Rights Pursuant To The STL Law.

Rodale also failed to satisfy § 1798.83(b) because its Privacy Policy did not disclose its customers' rights pursuant to the Act. Subdivision 1798.83(b)(1)(B) provides that the "first page of the link the privacy policy shall describe a customer's rights pursuant to ***this section***." *See* § 1798.83(b)(1)(B) (emphasis added). As explained above, Section II(A) *supra*, the phrase "this section" as it appears in § 1798.83(b)(1)(B) shows the mandatory obligation to describe customers' rights under the Act as a whole. Customers' rights under the STL Law include, pursuant to § 1798.83(a), the right to request the identities of third parties with

---

[4]    It is further worth noting that the hyperlink provided in Rodale's Privacy Policy was historically a broken link and only became active when Plaintiff's counsel alerted Rodale of the error. (*See* iCyte Report, Dkt. 28, Ex. 1) (displaying "We're Sorry: Page Not Found" after clicking on html "opt-out" link).

33

whom their information has been shared and the categories of information shared. In the event where a qualified business complies with § 1798.83(c)(2), it may respond to a customer's request by notifying that customer of the right to opt-out.

The district court mistakenly found that Rodale's statement "If you do not want us to share your PII with other companies or organizations, please let us know" amounted to a description of the customers' rights under the Act. (R. 19.) Not only does this statement fail to affirmatively describe ***any*** customer rights under the Act (*see* Section IV *infra*) it is also narrow in scope and does not mention the right to request disclosures under § 1798.83(a). Again, the plain language of § 1798.83(b)(1)(B) requires qualified businesses to notify customers regarding their rights pursuant to the "section." Therefore, while businesses may elect to respond to customer inquires pursuant to § 1798.83(c)(2), they must still notify customers of their right to request disclosures in the first place.

In sum, this Court should find Rodale failed to comply with § 1798.83(b) because it did not disclose contact information or notify customers of their rights under the Act.

34

## IV.   RODALE FURTHER FAILED TO COMPLY WITH § 1798.83(c)(2) IN ANY CASE.

As a final matter, Rodale's Privacy Policy falls short of complying with § 1798.83(c)(2) in any case. Therefore, even if this Court were to find complying with Subdivision (c)(2) obviates a business's obligation to respond to a request made pursuant to Subdivision (a) and the duty to disclose contact information for making requests under Subdivision (b), Baxter has still stated a violation of the Act because Rodale hasn't satisfied Subdivision (c)(2).

The district court found Rodale had complied with § 1798.83(c)(2) because Rodale supposedly (1) adopts and discloses to the public a policy of allowing a customer to opt-out of information sharing, (2) notifies customers of the right to opt-out, (3) provides a cost free means to opt-out, and (4) provides contact information for customers to lodge requests under § 1798.83(a). (R. 19-20.)

As explained in detail below, these conclusions are incorrect. On the face of the Privacy Policy itself, Rodale neither adopted nor disclosed any policy of allowing its customers to opt-out of information sharing, and failed to notify its customers of the "right" to opt-out or provide contact information where customers can request information

35

under § 1798.83(a). Accordingly, this Court should find Rodale failed to comply with § 1798.83(c)(2).

### A. Rodale's Privacy Policy Failed To Disclose Any Policy of Not Sharing Personal Information For Customers Who Opt-Out Or Of Only Sharing The Information Of Customers Who Opt In.

First, Rodale failed to comply with § 1798.83(c)(2)—and therefore could not avail itself of Subdivision (c)(2)'s supposed alternative response provision—because it did not "adopt[ ] and disclose to the public, in its privacy policy," a policy of not disclosing its customers' personal information unless they opt-in or of allowing customers to opt-out of information sharing. *See* § 1798.83(c)(2).

The Privacy Policy Rodale sought to introduce did not mention any "policies" that had been adopted by Rodale with respect to information sharing. It did not state that Rodale had adopted a policy of not disclosing customers' personal information unless they opt-in, nor did it state that Rodale had adopted a policy of allowing customers to opt-out of having their information shared with third parties for the third parties' direct marketing purposes. (*See* R. 53.)

In fact, all the Privacy Policy states is that customers should "let [Rodale] know" if they "do not want" to have their information shared.

36

This mere invitation for the customer to express his or her preference with respect to information sharing does not equate to Rodale having affirmatively adopted (let alone disclosed) a policy of never disclosing its California customers' personal information once they exercise their right to opt-out. Perhaps Rodale takes no such action in response to such expressions—Rodale could merely be compiling data regarding its customers' preferences or waiting until a critical mass has been reached to cease its practice of information sharing altogether. Or Rodale could respond by removing the requestor's data from its sharing practices. The point is that we don't know what Rodale's policy is on this issue because—in derogation of the Act—its privacy policy doesn't provide the answer.

Therefore, Rodale hasn't satisfied § 1798.83(c)(2) because it failed to "adopt[ ] and disclose" a policy of not disclosing its customers' personal information unless they opt-in, or of not disclosing their information if they opt-out.

37

**B.   Rodale Failed to Notify Its Customers Of Their Right To Opt-Out Of Information Sharing.**

Similarly, the district court erroneously found Rodale had complied with § 1798.83(c)(2) by notifying customers of their right to opt-out of information sharing.

Subdivision 1798.83(c)(2) provides "the business may comply with subdivision (a) by notifying the customer of his or her ***right*** to prevent disclosure of personal information." (Emphasis Added.) Contrary to the requirements of this provision, Rodale's Privacy Policy disclosure merely says that if the customer does not want Rodale to share the customer's personal information with other companies, the customer should let them know by accessing a hyperlinked form, by calling a toll-free number, or by writing to customer service. (R. 53.) This does little more than solicit its customers' preferences and advise them of their ability to request to opt-out. A statement that the customer has the ability to request to opt-out hardly qualifies as notice of the customer's right to opt-out under the Shine the Light Law.

In its order, the district court found Baxter's argument that Rodale failed to inform its customers of the right to opt-out of information sharing "stretches the statute's language too far" and is

38

"essentially a semantic distinction" that would "create a mine field for

violations." (*See* R. 20.) However, as this Court has explained:

> It might be answered that all legal disputation is, in the final analysis, 'an exercise in semantics'. Since man has not yet evolved into a telepathic being, he must resort to language in order to express his thoughts and desires . . . The law is shot through with semantic distinctions: Assault versus battery; flotsam versus jetsam; law versus equity; tort versus contract; bailor versus bailee; drawer versus drawee; trustor versus trustee; and fee simple versus terminable interest.

*Shedd's Estate*, 237 F.2d 345, 346-47 (9th Cir. 1956). Therefore, that

Baxter's argument involves "semantics" (i.e., the meaning of "right" as

used in § 1798.83(c)(2)) hardly discounts the strength of her position.

Further, the lower court's reading of the Act excuses businesses

from actual compliance to fend off litigation that could arise from

enforcement of the Act's plain language. But this is not the district

court's role. Rather, it is well established that "when the statute's

language is plain, the sole function of the courts—at least where the

disposition required by the text is not absurd—is to enforce it according

to its terms." *Lamie v. United States Trustee,* 540 U.S. 526, 534 (2004)

(*quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*

530 U.S. 1, 6 (2000)) (internal quotation omitted); *see also Estate of*

*Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992) (describing "the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written").

Here, the plain language of § 1798.83(c)(2) requires businesses to inform customers of their right to prevent their information from being shared. As opposed to being merely something the customer may request (and thus, subject to a business's discretion), a right means that customers are entitled to a certain mandatory outcome—a guarantee that those who submit a request will indeed not have their information shared. *See, e.g., Price v. City of Stockton*, 390 F.3d 1105, 1109 (9th Cir. 2004) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)) ("[I]t is only 'unambiguously conferred right[s] . . . , not the broader or vaguer 'benefits' or 'interests,' that may be enforced' under Section 1983."); *Carter v. Smith Food King,* 765 F.2d 916, 923-24 (9th Cir. 1985) ("right-to-sue letter" signals claimant is "entitled to bring a civil action").

Rodale's privacy policy, however, is couched in permissive language—it permits customers to express a preference for not having their information shared without guaranteeing any outcome. *See*

40

*Carver v. Lehman*, 558 F.3d 869, 875 (9th Cir. 2009) (explaining that explicitly mandatory language contains specific directives such that "if the [] substantive predicates are present, a particular outcome must follow") (internal citations and quotations omitted). In contrast, the STL Law requires businesses to provide mandatory results—i.e., a guaranteed cessation of future sharing of the customer's information. Rodale's Privacy Policy, which merely states that a customer can "let [Rodale] know" they don't prefer to have their information disclosed, contains no guarantee of a proscribed outcome. (*See* R. 53.)

Ultimately, the legislature mandated a description of rights, not a mere invitation to express one's desires. *See* § 1798.83(c)(2). The district court's characterization of this as a semantics issue merely proves the point—the actual language of the Act required more of Rodale than the company provided. Accordingly, the Privacy Policy—especially when viewed in a light most favorable to Baxter, as required—fails to adequately disclose a customer's rights under the Act, and thus, is insufficient to enable Rodale to avail itself of any alternatives offered under § 1798.83(c)(2).

41

### C.  Rodale Did Not Provide Its Customers A Means To Request § 1798.83(a) Shine The Light Disclosures.

The district court is also mistaken that, via its Privacy Policy, Rodale complied with § 1798.83(c)(2) because it "provides customers with an address and telephone number with which to submit requests pursuant to subsection (a)." As explained in Section III(A), *supra*, Rodale did not designate contact information for its customers to lodge requests for information under § 1798.83(a). The supposed "contact information" disclosed in Rodale's Privacy Policy is merely the general contact information for customer service and does not satisfy § 1798.83(b) or otherwise enable its customers to request Shine the Light disclosures.

Accordingly, this Court should find Rodale has not complied with § 1798.83(c)(2). Thus, even if this Court were to find that § 1798.83(c)(2) operates in the alternative to (a) and (b), Baxter has still stated a violation of the Act.

### CONCLUSION

This Court should reverse the lower court decision in its entirety. As a qualified business, Rodale was required to comply with § 1798.83(b), which it failed to do. Rodale did not designate and disclose

42

contact information, and it failed to inform customers of their rights under the Act. Rodale also failed to comply with § 1798.83(c)(2) because it did not adopt and disclose a compliant policy and failed to notify customers of their right to opt-out of information sharing. Accordingly, Baxter has stated a claim for violation of the STL Law. Therefore, Plaintiff-Appellant Charlotte Baxter respectfully prays that this Court reverse the district court's August 29, 2012 Order and the court's Judgment.

Dated: April 15, 2013                Respectfully submitted,

                                     By:   /s/ Megan Lindsey

                                     Attorneys for Plaintiff-Appellant
                                     Charlotte Baxter

Sean Reis
THE REIS LAW FIRM, A.P.C.
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (714) 352-5200
Facsimile: (714) 352-5201
sreis@reisfirm.com

Jay Edelson
Rafey Balabanian
Ari Scharg
EDELSON LLC

350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com

Steven Woodrow
Megan Lindsey
EDELSON LLC
999 W. 18th Street, Suite 3000
Denver, Colorado 80202
Telephone: (303) 357-4878
Facsimile: (312) 589-6378
swoodrow@edelson.com
mlindsey@edelson.com

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,905 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as well as the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft MacWord 2008 in 14 point Century Schoolbook font.

| 9th Circuit Case Number(s) | 12-56925 |
|---|---|

NOTE: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)   | Apr 15, 2013 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)   | s/ Megan Lindsey |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)   | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)